FILED
2017 Mar-08  AM 11:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **ERNEST LASHAWN STARKS** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 5:14-cv-08011-KOB** |
| | ) | **5:11-cr-404-KOB-PWG** |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM OPINION**

On January 20, 2012, a jury convicted Ernest Lashawn Starks of carjacking in violation of 18 U.S.C. § 2219 and brandishing a firearm in violation of 18 U.S.C. § 924(c). The court sentenced Mr. Starks to 180 months in custody. Before the court is Mr. Starks's pro se motion to vacate, set aside or correct his sentence under § 2255. (Civ. Docs. 1, 6, and 26).[1] A prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court . . . to vacate, set aside or correct the sentence." 28 U.S.C. § 2255.

Mr. Starks asserts nine grounds why this court should overturn his conviction: (1) ineffective assistance of counsel; (2) violation of Due Process; (3) violation of Equal Protection; (4) inconsistent perjured testimony; (5) prosecutorial misconduct; (6) lack of notice of pending charges; (7) the Supreme Court's decision in *Johnson*; (8) admission at trial of evidence obtained without a warrant; and (9) denial of his  motion for a new trial based on newly discovered evidence. *See* (Civ. Docs. 1, 6, and 26).

---

[1] Documents from Mr. Starks's criminal trial, case number 5:11-cr-404, are designated "Cr. Doc. __."

The court has interpreted Mr. Starks's claims liberally because he is not represented by counsel for this petition. *See Mederos v. United States*, 218 F.3d 1252, 1254 (11th Cir. 2000) ("Pro se filings . . .  are entitled to liberal construction."). Therefore, the court **GRANTS** Mr. Starks's second motion to amend his petition. (Docs. 26, 27). The court will consider every argument advanced in both Mr. Starks's original motion and his two amendments. *See* (Civ. Docs. 1, 6, and 26). After reviewing Mr. Starks's filings, for the reasons explained below, the court finds that his arguments lack merit. Therefore, the court **DENIES** Mr. Starks's motion to vacate, set aside, or correct his sentence.

## I.   BACKGROUND

On May 11, 2011, a carjacking occurred at a liquor store in Huntsville, Alabama. Shortly after, a nearby convenience store was robbed.

Kevin Holmes and Thomas Omar Flowers, Mr. Starks' cousin, were arrested on suspicion they were involved in the carjacking. Mr. Holmes, Mr. Flowers, and Cameron Byrd were all students at Alabama A&M in the spring of 2011. A grand jury indicted Mr. Starks for aiding and abetting carjacking and brandishing a firearm during a crime of violence. At trial, Mr. Holmes and Mr. Flowers accepted a plea agreement and testified against Mr. Starks as follows.

While Mr. Byrd, Mr. Flowers, and Mr. Holmes were out buying cigarettes, Mr. Starks invited Mr. Byrd to come over to his house. When they arrived, Mr. Starks suggested they go buy cigars. The crew left Mr. Starks's residence driving Mr. Flower's mother's vehicle. (Cr. Doc 83 at 220–24, 350–54).

During the drive, Mr. Starks and Mr. Byrd discussed committing a robbery. Mr. Starks, who was driving, parked in front of a liquor store to steal a car to use in the heist. Mr. Flowers

---

Documents from Mr. Starks's § 2255 action, case number 5:14-cv-08011-KOB, are designated "Cv. Doc. __."

did not want his mother's vehicle involved in the robbery. (Cr. Doc 83 at 225–32, 356–68).

When a car pulled into the lot, Mr. Starks asked which of the men would take the man hostage. Mr. Byrd volunteered and got in the back of the man's car while he was in the store. When the man returned to his vehicle, Mr. Byrd held a gun to his head and told him to drive. After a short distance, Mr. Byrd told the man to get out of the car and lie on the ground. Mr. Holmes testified that Mr. Starks got out of Mr. Flowers' mothers' car brandishing a pistol and told the man not to get up. (Cr. Doc 83 at 232–35, 365–66).

Mr. Byrd and Mr. Flowers hoped in the carjacked vehicle, but it quickly broke down. Mr. Starks picked up Mr. Flowers and Mr. Byrd. Mr. Starks stated that he still intended to commit the robbery, despite having to now resort to using Mr. Flowers' mother's vehicle in the crime. Passing a convenience store and seeing the clerk out from behind the counter cleaning the store, Mr. Starks identified the business as the group's target. Mr. Byrd exited the vehicle armed with a pistol. When Mr. Flowers refused to get out, Mr. Starks pointed a gun at him and told him to go into the store. Mr. Flowers and Mr. Byrd robbed the store, return to the vehicle, and Mr. Starks drove off. (Cr. Doc 83 at 242–48, 368–73).

Attorney Charles Pullen represented Mr. Starks during the preliminary hearing, arraignment, trial, and sentencing, but not during his appeal. (Cv. Doc. 1 at 10–11). Mr. Starks's counsel made several motions before and at trial. Before trial, Mr. Starks's counsel moved to sever his trial from Mr. Byrd's. (Cr. Doc. 28). The court denied the motion. At the conclusion of the government's case, Mr. Starks's counsel moved for a judgment of acquittal. (Cr. Doc. 83 at 286). The court denied that motion as well. (Cr. Doc. 83 at 288).  Mr. Pullen did not renew the motion after presenting Mr. Starks's case.

A jury convicted Mr. Starks of carjacking in violation of 18 U.S.C. § 2219 and

3

brandishing a firearm in violation of 18 U.S.C. § 924(c). (Cr. Doc. 48; Cr. Doc. 85 at 3). The court sentenced Mr. Starks to 180 months in custody: 96 months on count one, plus 84 months on count two, to be served consecutively. The court sentenced Mr. Byrd to 399 months in custody (Cr. Doc. 68).

Mr. Starks appealed to the Eleventh Circuit Court of Appeals, and the Court affirmed his conviction and sentence. *See United States v. Starks*, 536 Fed. App'x 843 (11th Cir. 2013).[2] On appeal, Mr. Starks argued insufficient evidence existed to convict him of either crime; he and Mr. Byrd should not have been tried together; and his sentence was substantively unreasonable because of the disparity of sentences he and Mr. Byrd received for their carjacking convictions. Because Mr. Starks's counsel did not renew his motion for a judgment of acquittal, the Eleventh Circuit reviewed his sufficiency of the evidence arguments under a miscarriage of justice standard and affirmed the convictions based on the sufficiency of the evidence. The Court also held that the district court did not err in trying Mr. Starks and Mr. Byrd together; and that the court did not abuse its discretion when it sentenced Mr. Starks to 180 months imprisonment.

On March 21, 2014, Mr. Starks sued to vacate, set aside, or correct his sentence under § 2255. (Cv. Doc. 1). Mr. Starks then filed an amended motion on May 19, 2014. (Cv. Doc. 6). After a preliminary review of Mr. Starks's motions, the court ordered the government to show cause why the court should not grant Mr. Starks's motion. (Cv. Docs. 3 and 7). The government responded on July 30, 2014. (Cv. Doc. 10). On August 5, 2014, the court found the case ready for summary disposition and ordered Mr. Starks to submit any additional evidence within 21 days. (Cv. Doc. 11). Mr. Starks filed a reply to the government's response on August 22, 2014.

---

[2] Mr. Starks was represented in his appeal by Marcus John Edward Helstowski, James Tobia Gibson, Kevin L. Butler, and Allison Case. Mr. Starks does not make any argument their performance was deficient.

(Cv. Doc. 12). The court deemed the case under submission for summary disposition on September 2, 2014. (Cv. Doc. 13).

Mr. Starks then moved to expand the record on September 8, 2014. (Cv. Doc. 14). The court granted Mr. Starks's motion to expand the record and accepted the affidavits attached to his motion as part of his reply to the government's response. (Cv. Doc. 15). Again, the court found that a hearing on Mr. Starks's motion was not warranted and deemed the case under submission for summary disposition. (Cv. Doc. 15).

On May 12, 2016, Mr. Starks moved to amend his petition. (Cv. Doc. 26). As noted above, the court has now granted the motion to amend and is considering the additional grounds asserted in that amendment in this opinion. This matter is ripe for resolution.

## II.     DISCUSSION

Mr. Starks asserts nine grounds to support his petition challenging his sentence. As discussed below, none of these grounds have merit.

### A.     Ineffective Assistance of Counsel

First, Mr. Starks argues that his trial counsel's performance was so deficient it amounted to a violation of his constitutional rights.

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 684 (1984). To prevail on a claim of ineffective assistance of counsel, Mr. Starks must demonstrate that (1) his counsel's performance fell below an objective standard of reasonableness; *and* (2) he suffered prejudice because of that deficient performance. *See id.* at 684–91.

Deficient performance exists when counsel acts "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The test is not what the best—*or even a*

good—lawyer would have done, but "whether *some reasonable lawyer* at the trial could have

acted, in the circumstances, as defense counsel acted at trial." *Waters v. Thomas*, 46 F.3d 1506,

1512 (11th Cir. 1995) (en banc) (emphasis added).

A petitioner's counsel is presumed to have acted reasonably. *Strickland*, 466 U.S. at 690;

*Williams v. Head*, 185 F.3d 1223, 1228 (11th Cir. 1999) ("[W]here the record is incomplete or

unclear about [counsel]'s actions, we will presume that he did what he should have done, and that

he exercised reasonable professional judgment."). To overcome that presumption, a petitioner

"must identify the acts or omissions of counsel that are alleged not to have been the result of

reasonable professional judgment." *Strickland*, 466 U.S. at 690.  Conclusory or unsupported

allegations cannot support an ineffective assistance of counsel claim. *See Tejada v. Dugger*, 941

F.2d 1551, 1559 (11th Cir. 1991) (finding "unsupported allegations, conclusory in nature and

lacking factual substantiation" to be an insufficient basis for relief); *see also Chandler v. United

States*, 218 F.3d 1305, 1314 n.15 ("An ambiguous or silent record is not sufficient to disprove

the strong and continuing [*Strickland*] presumption.").

Prejudice exists if "a reasonable probability [exists] that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." *Strickland*, 466 U.S at 694.

Merely showing that counsel's error had "some conceivable effect on the outcome of the

proceeding" cannot establish prejudice. *Id.* at 693.

Attorney Charles Pullen performed effectively by meeting the minimum standard of

reasonableness. However, regardless of Mr. Pullen's performance, Mr. Starks failed to show that

any of Mr. Pullen's alleged errors prejudiced him.

### 1.    *Ineffective Protection of Rights*

Mr. Starks argues that his counsel "ineffectively protected his rights throughout the entire

process."(Cv. Doc. 1 at 4). However, Mr. Starks does not identify *specific* acts or omissions of counsel that show how counsel ineffectively protected his rights; nor does Mr. Starks show how he suffered prejudice because of his counsel's alleged "ineffective performance." If Mr. Starks intends this contention to be a standalone claim of ineffective assistance of counsel, rather than a mere introductory statement, the court finds the claim without merit.

>    2.    *Preservation of Rights and Error*

Next Mr. Starks argues that his counsel "failed to properly preserve right[s] and error" (Cv. Doc. 1 at 4), and "failed to renew [his] judgment of acquittal under Federal Rule of Criminal Procedures [sic] 29." (Cv. Doc. 6 at 2). Mr. Starks's general contention that his counsel failed to preserve his rights and errors, like his contention that counsel ineffectively protected his rights, is merely an unsupported conclusory statement and is not grounds for relief. *See Tejada*, 941 F.2d at 1559.

Further, Mr. Starks fails to establish that his counsel's failure to renew his judgment of acquittal was either unreasonable or prejudicial. At the close of the government's case, Mr. Starks's counsel moved for a judgment of acquittal on the charge of brandishing a firearm, and the court denied the motion because sufficient evidence indicated that Mr. Starks brandished a firearm either at the carjacking victim and/or at Mr. Flowers during the robbery based on the testimony of Mr. Holmes and Mr. Flowers. (Cr. Doc. 83 at 286–88). Mr. Starks does not show how counsel's failure to renew the motion was unreasonable or prejudicial when the court had already denied Mr. Starks's first motion.

Nothing suggests that the court would have granted the motion the second time it was offered as the evidence presented by the defense did not challenge the evidence cited by the court in ruling on the original motion. Mr. Starks presented three witnesses during his case. First, Mr.

Starks called Officer Larry Davenport, a police officer with Alabama A&M University. Officer Davenport testified that he had stopped a car on May 11, 2011 that contained Mr. Byrd, Mr. Holmes, and Mr. Flowers, as it exited the university around 6:00 p.m.. Officer Davenport testified the men were all dressed in black and he thought that was unusual. Officer Davenport also testified he never saw Mr. Starks that night.

Second, Mr. Starks called Frank Williams, his roommate. Frank Williams testified Mr. Starks remained at home on May 11, 2011. Finally, Mr. Starks called David Williams, a Huntsville Police Department officer. Officer Williams testified that he filed a supplemental report related to the case. None of this testimony would alter the court's judgment that sufficient evidence existed that Mr. Starks brandished a firearm if the jury believed the testimony of Mr. Flowers and Mr. Holmes.

Mr. Starks also fails to establish that his counsel's failure to renew the motion prejudiced him in his appeal. Not renewing the motion for a judgment of acquittal led the Eleventh Circuit to review his sufficiency of the evidence argument under a miscarriage of justice standard rather than de novo standard. Mr. Starks makes no argument—and the court sees no reason—that the result of the proceeding would have been different had the appellate court applied the less deferential standard of review. The Eleventh Circuit noted that conflicting versions of events had been offered at trial but found the inconsistencies to be "classic jury arguments." *Starks*, 536 Fed. Appx. at 848 (quoting *United States v. McGuire*, 706 F.3d 1333, 1336 (11th Cir.)).

Given that an appellate court is prohibited from "revisit[ing] the credibility determinations of the jury," the court sees no reason that the Eleventh Circuit would have reached a different conclusion if it had applied a de novo standard to Mr. Stark's sufficiency of the evidence challenge. *See United States v. Thompson*, 422 F.3d 1285, 1291–92 (11th Cir.

8

2005). Therefore, Mr. Starks has also failed to establish that his counsel's failure to renew his motion of acquittal prejudiced him in his appeal.

### 3. Failure to Know the Law and Inform the Court of Differences with Client

Mr. Starks argues his counsel "fail[ed] to know the law fully and to notify the court when differences [arose] between [Mr. Starks] and counsel." (Cv. Doc. 1 at 4). Like Mr. Starks's other conclusory arguments, he provides no specific instances of his counsel's failure to fully know the law. To evaluate alleged failures of counsel, the court must know specifics: what relevant and material law did counsel not know, and how did such failure affect the presentment of evidence or the instruction to the jury, or the ultimate verdict? Mr. Starks's bare assertion that his counsel failed to know the law cannot support a claim that his counsel's conduct was deficient. *See Tejada*, 941 F.2d at 1559.

The only instance that Mr. Starks identifies regarding counsel's failure to notify the court when differences arose between him and counsel is that "[he] was told he was going to testify at trial by counsel[,] then at last minute counsel told [him] that he was not testifying." (Cv. Doc. 1 at 4). However, Mr. Starks fails to establish that his counsel's conduct was objectively unreasonable or prejudicial. In fact, the court asked Mr. Starks about his decision not to testify, and he replied that he voluntarily decided, based on his discussion with counsel, that "it is in [his] best interest not to testify." (Cr. Doc. 84 at 6–7).

To the extent any "differences arose" regarding Mr. Starks's decision to testify, his counsel's failure to notify the court of the decision did not prejudice him because the record shows that Mr. Starks told the court that he voluntarily decided not to testify.

### 4. Failure to Exercise Professional Judgment

Mr. Starks also alleges that his counsel failed to "exercise professional judgment on

9

behalf of [Mr. Starks] and failed to call expert witnesses to examine the video tape of the events of that night." (Cv. Doc. 1 at 4). Mr. Starks provides no reason expert analysis of the video was required or that reasonable counsel would conclude that expert testimony was necessary. Mr. Starks also fails to show how his counsel's failure to call an expert witness to examine a video tape from the convenience store security camera prejudiced him. Mr. Starks provides no reason expert analysis of the video tape was needed or why it would have affected the outcome.

On this ground, Mr. Starks again fails to meet either prong of the *Strickland* test.

5.    *Failure to Impeach Government's Witnesses*

Next Mr. Starks argues his counsel "failed to impeach the lawless government's two cooperating witnesses" and failed "to ask for finger print evidence/DNA on the mask/clothing that night." (Cv. Doc. 1 at 4).

Mr. Starks's contention that his counsel did not impeach Mr. Holmes and Mr. Flowers, the government's cooperating witnesses, is not supported by the record. Mr. Starks's counsel vigorously cross examined Mr. Holmes about his prior criminal conduct (Cr. Doc. 83 at 72); his statement to police that he wanted to cooperate with them at the scene of the arrest and that he would tell police "whatever they needed in their investigation" (Cr. Doc. 83 at 77); his written statement (Cr. Doc. 83 at 85); the fact he received $40 from Mr. Flowers (Cr. Doc. 83 at 89); his arrest on an unrelated outstanding warrant on the night of the incident (Cr. Doc. 83 at 91); why he did not exit the car while it was stopped at the convenience store (Cr. Doc. 83 at 109); inconsistencies between his testimony regarding the location of the vehicles during the carjacking (Cr. Doc. 83 at 111); and that his testimony about Mr. Starks's action differed from the victim's testimony. (Cr. Doc. 83 at 117).

Similarly, Mr. Starks's counsel cross examined Mr. Flowers regarding entering a plea

agreement that required him to cooperate and testify in Mr. Starks' trial; (Cr. Doc. 83 at 199); two phone calls from the jail in which he told his mother and Stephanie McCauley that Mr. Starks had not been involved in the incident (Cr. Doc. 83 at 208); and how a ski mask was found in his car when he said that he gave the ski mask to Mr. Starks. (Cr. Doc. 83 at 211). Mr. Starks's counsel also cross examined Mr. Flowers about his testimony concerning Mr. Starks's actions during the crimes. (Cr. Doc. 83 at 218).

Mr. Starks's counsel also cross examined Mr. Flowers on the inconsistencies with his trial testimony and a written statement he made shortly after the incident, and Mr. Flowers testified that part of his written statement was untrue. (Cr. Doc. 83 at 204–05). Counsel pursued this line of questioning so thoroughly that the court stated he had "beat this horse enough" and instructed him to move on. *Id*. at 205. Such extensive and intensive questioning belies Mr. Starks's contention that his counsel failed to impeach Mr. Flowers and Mr. Holmes.

Whether counsel "impeached" a witness raises a question of credibility; the jury alone determines whether efforts to impeach succeed. Here, the jury found testimony of Mr. Flowers and Mr. Holmes credible despite the valiant efforts of counsel.

Therefore, Mr. Starks has failed to establish that his counsel's cross examination of the government's witnesses was deficient in *any* way, much less that it fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. And further, even if counsel's conduct was unreasonable, Mr. Starks has not shown that the lack of any additional questioning prejudiced him. Accordingly, this ground lacks merit.

### 6.    *Failure to Obtain Evidence*

Mr. Starks argues that his counsel was ineffective by not asking for fingerprint and DNA evidence from the mask and clothing found in the Jeep. Mr. Starks fails to establish why a

reasonable attorney would have asked for such evidence. No evidence was presented that Mr. Starks wore any particular item of clothing on that night. The test results would be irrelevant. Mr. Starks has not shown what favorable evidence would have been obtained had his attorney procured the tests. Therefore, Mr. Starks has failed to show that his counsel's conduct was unreasonable or prejudicial.

Mr. Starks also alleges that his counsel was ineffective because he did not obtain Mr. Flowers and Mr. Holmes's statements to police and transcripts of their phone conversations from the jail. However, the facts that Mr. Starks's counsel questioned Mr. Flowers and Mr. Holmes about these documents, as discussed above, indicates that Mr. Starks's counsel did have these statements and that he acted reasonably in using them during cross examination. (Cr. Doc. 83 at 204–05, 208).

### 7. *Counsel's Suicide*

Finally, Mr. Starks observes that his attorney committed suicide after his trial. However, his counsel's death is irrelevant to whether he provided effective assistance to him during his representation. Mr. Starks offers only pure speculation that the case had anything to do with counsel's death. Therefore, Mr. Starks's counsel's death will not support his claim for relief.

Mr. Starks has failed to meet either prong of the *Strickland* test. As such, Mr. Starks's claim to vacate, alter, or amend his sentence because of ineffective assistance of counsel lacks merit.

### B.   *Johnson* Claim

In Mr. Starks's memorandum supporting his second amendment, he argues that the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), holding the residual clause of the Armed Career Criminal Act unconstitutional for vagueness, should be

applied with equal force to the same language found in the "Career Offender" provision contained in § 4B1.2(a)(2) of the United States Sentencing Guidelines. (Cv. Doc. 27 at 4). Mr. Starks's argument is unavailing for at least two reasons.

First, Mr. Starks was not sentenced as a career offender under the guidelines. Mr. Starks's criminal history score was zero, and nothing in the presentencing report or at sentencing indicated that the court sentenced Mr. Starks as a career offender. *See* (Cr. Doc. 66 at 11). Therefore, even if *Johnson* suggests that the career offender provisions of the Guidelines are unconstitutionally vague, it would not affect Mr. Starks's sentence because the court did not consider that provision when imposing it. Therefore, Mr. Starks's argument that *Johnson* casts his sentence into doubt lacks merit.

Second, even had Mr. Starks been sentenced under the career offender provision, the Eleventh Circuit has clarified that *Johnson* has not invalidated that Guideline provision because sentencing guidelines cannot be unconstitutionally vague. *See United States v. Matchett*, 802 F.3d 1185, 1196 (11th Cir. 2015) ("[W]e reject [the] argument that advisory guidelines can be unconstitutionally vague.").

### C.       Procedurally Defaulted and Prior Adjudicated Claims

Mr. Starks also asserts the following grounds in his petition: violation of Due Process; violation of Equal Protection; inconsistent perjured testimony; prosecutorial misconduct; notice of pending charges; admission of government exhibits that were evidence obtained without a warrant; and denial of his motion for a new trial based on newly discovered evidence. As noted below, these grounds for relief are either procedurally defaulted or have already been adjudicated against him.

### 1.       *Already Adjudicated*

A party may not re-litigate a matter decided against it on direct appeal. *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) ("Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255.").

In ground two of his first amended petition, Mr. Starks contends that "the Government did not satisfy the Due Process Clause's requirement that [his] guilt be determined beyond a reasonable doubt." (Doc. 6 at 2). Mr. Starks argues that the evidence presented could not prove he committed either crime for which he was charged. Mr. Starks contends the victim of the carjacking never identified him; Mr. Flowers and Mr. Holmes's testimony conflicts with the victim's testimony; Mr. Holmes and Mr. Flowers's testimony implicating him was inconsistent; and that portions of Mr. Holmes's testimony differed from the security camera video.

Mr. Starks also challenged the sufficiency of the evidence to convict him of both charges on direct appeal, and the Eleventh Circuit affirmed his conviction. *United States v. Starks*, 536 Fed. App'x 843, 849 (11th Cir. 2013) ("Although the testimony of Holmes and Flowers may be, as Starks and Byrd contend, suspect, it was not incredible as a matter of law.").  Therefore, Mr. Starks's challenge to the sufficiency of the evidence in this petition is barred. *See Nyhuis*, 211 F.3d at 1343.

Mr. Starks also alleges in his second ground that his due process rights were violated because the court relied on hearsay and evidence of other crimes not presented to the jury in sentencing him. However, the Federal Rules of Evidence do not apply at sentencing. *See* U.S.S.G. § 6A1.3(a) ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."); *United States v. Cantellano*, 430 F.3d 1142,

14

1146 (11th Cir. 2005) ("The right to confrontation is not a sentencing right."). Therefore, Mr. Starks's second ground also lacks merit.

In Mr. Starks's third ground, he contends his Fourteenth Amendment rights were violated and he was denied equal protection of the law. (Doc. 5 at 5). Again, Mr. Starks argues that Mr. Flowers and Mr. Holmes's testimony was not credible; the evidence was insufficient to convict him; and that Mr. Holmes's testimony contradicted his grand jury testimony. Mr. Starks's argument reduces to another attempt to challenge the sufficiency of the evidence. As this issue has already been resolved on direct appeal against Mr. Starks, the sufficiency of the evidence cannot be the basis of altering, amending, or vacating his sentence in this collateral action.

In his fourth ground, Mr. Starks argues that Mr. Flowers and Mr. Holmes's testimony was inconsistent and counsel should have impeached the witnesses. (Doc. 1 at 8). Again, Mr. Starks made the same arguments on appeal. In fact, the Eleventh Circuit noted the same inconsistent or factually inaccurate testimony cited by Mr. Starks when it upheld his conviction, noting these were questions for the jury. *See U.S. v. Starks*, 536 Fed. App'x 843, 848–49 (11th Cir. 2013). Therefore, the witnesses' inconsistent testimony is not grounds for granting Mr. Starks's petition. *See Nyhuis*, 211 F.3d at 1343.

Mr. Starks's second motion to amend also asserts another ground for vacating his sentence: that the trial court erred by not granting his motion for a new trial based on newly discovered evidence. (Doc. 26 at 3). Mr. Starks argues that "any claims by the government witnesses are impeachable . . . and should be rejected by the Court." *Id.* However, this claim is not new and is essentially yet another challenge to the sufficiency of the evidence used to convict Mr. Starks. As this issue was decided against him by the Eleventh Circuit, he is barred from re-litigating it. *See Nyhuis*, 211 F.3d at 1343.

15

2.    *Procedurally Defaulted*

The procedural default doctrine reflects the general rule that claims not raised on direct appeal may not be raised on collateral review. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). Federal courts will not review a procedurally defaulted claim unless the defendant can show either (1) cause for the default *and* actual prejudice from the error; *or* (2) that the court's failure to consider the claim will cause a miscarriage of justice because the defendant is actually innocent. *See Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Frady*, 456 U.S. 152, 167 (1982).

To establish cause excusing default, the petitioner must put forward "some external cause" for his failure to comply with the procedural requirements. *Reece v. United States*, 119 F.3d 1462, 1465 (11th Cir. 1997). A petitioner can also establish cause if he shows that his counsel was ineffective. *Id.* The court has already concluded that Mr. Starks's trial counsel's representation satisfied *Strickland*, and Mr. Starks presents no argument that his counsel for his appeal was deficient in any way. Therefore, Mr. Starks cannot show cause for his default based on ineffective assistance of counsel. Any cause shown must be some other external reason.

The miscarriage of justice standard requires the petitioner to show that he is actually innocent and not merely that the evidence used against him was legally insufficient. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986). To establish actual innocence, petitioner must demonstrate that, "in light of all the evidence . . . it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995). The petitioner is required to show "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id*. at 324.

Because Mr. Starks has failed to provide any new additional exculpatory evidence, he has

failed to make the stringent showing required to prove the actual innocence exception. Therefore, the court will now consider whether Mr. Starks's claims were raised in his direct appeal, and if not, whether he has shown cause for their omission and prejudice if he is not permitted to present them in this proceeding.

In his fifth ground, Mr. Starks alleges prosecutorial misconduct. (Doc. 6 at 6–11). Mr. Starks claims he was targeted by the FBI and the prosecutor so the agent could win his first case. Mr. Starks also alleges that the prosecutor made improper statements stereotyping Mr. Starks. Mr. Starks has not presented cause for his inability to raise the issue on appeal. Therefore, Mr. Starks's prosecutorial misconduct claim is procedurally defaulted.

In his sixth ground entitled "Notice of Pending Charges," Mr. Starks alleges that he was found guilty of a crime for which he was not indicted and that the proof offered by the government at trial varied materially from what was contained in the indictment. (Doc. 6 at 11). Again, Mr. Starks did not raise this ground on direct appeal and does not show now why he failed to do so. Therefore, the claim is procedurally defaulted.

In Mr. Starks's second motion to amend his petition, he adds a ground for vacating his sentence. Mr. Starks claims that the court erred in admitting evidence from a warrantless search of his home and his mother's car. (Doc. 26 at 2). This ground is substantially similar to a component of Mr. Starks's third ground of his first amended petition. However, this ground is procedurally defaulted. Mr. Starks did not raise the argument in his direct appeal and does not now show cause for that omission. Therefore, this ground for relief is barred.

## III.    CONCLUSION

Mr. Starks's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 lacks merit. Mr. Starks has failed to establish that he is entitled to a new trial or any other relief.

Therefore, the court **DENIES** the motion.


      **DONE** this 8th Day of March, 2017.


KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE